UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JANIRA TORRES, VICTOR FELICIANO, and
MARIA S. FONSECA, on behalf of themselves
and all others similarly situated,

                            Plaintiffs,                    **MEMORANDUM AND ORDER**
                                                      12 CV 923 (DRH) (ARL)

               - against -

UNITED HEALTHCARE SERVICES, INC.,

                           Defendant.
------------------------------------------------------------X
**APPEARANCES:**

**SHULMAN KESSLER LLP**
Attorneys for Plaintiffs
510 Broadhollow Road
Suite 110
Melville, New York 11747
By:    Troy L. Kessler, Esq.
         Marijana F. Matura, Esq.

**SEYFARTH SHAW LLP**
Attorneys for Defendant
620 Eighth Avenue
New York, New York 10018
By:    Christopher H. Lowe, Esq.
         Mary Ahrens, Esq.


**HURLEY, Senior District Judge:**

        Plaintiffs Janira Torres ("Torres"), Victor Feliciano ("Feliciano"), and Maria S. Fonseca

("Fonseca") commenced this action, on behalf of themselves and all others similarly situated,

asserting that defendant United Healthcare Services, Inc. ("defendant") deprived its sales

representative employees, including plaintiffs, of earned overtime compensation in violation of

the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York

Labor Law ("NYLL").

Presently before the Court is defendant's motion to dismiss the Complaint and to compel individual arbitration of each plaintiff's claims.  For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

The following facts are drawn from the Complaint and the parties' submissions.[1]

### Plaintiffs' Employment

Defendant is an insurance company that operates in New York.  Defendant "customarily and regularly deploys" its sales representative employees, including plaintiffs, "to one of [its] fixed sites in order to enroll eligible individuals in a Medicaid program."  (Compl. ¶ 3.) Plaintiffs assert that in those roles they "had little or no discretion in the performance of their duties" and "had no supervisory functions."  (*Id.* ¶ 44.)  Plaintiffs and other sales representatives "work long hours in order to meet aggressive quotas [defendant] imposes on them."  (*Id.* ¶ 3.) Plaintiffs allege that defendant "had a policy to deprive its sales representatives . . . of earned overtime wages by uniformly misclassifying them as exempt from federal and state overtime protections."  (*Id.* ¶ 2.)  Plaintiffs further allege that defendant failed to record all of the time its employees worked or to maintain certain payroll records as required by the FLSA and NYLL. (*Id.* ¶ 42.)

Torres worked as a sales representative between August 2009 and October 2011.  (*Id.* ¶¶

---

[1]     As set forth more fully in the text below, a motion to compel arbitration is subject to a summary judgment standard.  *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Accordingly, in evaluating the present motion, the Court may properly consider extrinsic evidence submitted by the parties as well as the allegations in the Complaint.  *See Sutherland v. Ernst & Young, LLP*, 768 F. Supp. 2d 547, 548 n.1 (S.D.N.Y. 2011).

48, 50.)  During that time, she worked more than 55 hours "in most workweeks" but was never

paid "overtime pay at the statutory rate of time and one-half her regular rate of pay" after

working 40 hours per week.  (*Id.* ¶¶ 54-56.)  Feliciano, who worked as a sales representative

between November 2007 and November 2011, also worked more than 55 hours "in most

workweeks" while employed by defendant.  (*Id.* ¶¶ 57, 59, 63.)  Defendant also allegedly failed

to compensate Feliciano for time worked in excess of 40 hours per week with a time-and-a-half

overtime rate.  (*Id.* ¶ 64.)  Fonseca worked more than 50 hours "in most workweeks" during her

employment as a sales representative for defendant between November 2010 and July 2011.  (*Id.*

¶¶ 65, 67, 72.)  Fonseca was not compensated at a rate of one and one-half her regular rate of pay

for hours worked in excess of 40 hours per week.  (*Id.* ¶ 73.)

***The Arbitration Agreement***

At the commencement of their respective employment periods as sales representatives for

defendant, Torres, Feliciano, and Fonseca were each provided with electronic copies of the

"UnitedHealth Group Employment Arbitration Policy" (the "Arbitration Agreement").  (Decl. of

Deveri Ray, dated June 20, 2012 ("Ray Decl.") ¶¶ 3-6.)  Thereafter, plaintiffs were asked to

provide an electronic acknowledgment of receipt by logging on to defendant's PeopleSoft

Human Resources Management System and pressing a button that indicated "I have read and

agree to the above."  (*Id.*)  Torres electronically acknowledged receipt of the Arbitration

Agreement on August 22, 2009 – 19 days after the commencement of her employment.  (*Id.* ¶ 4

& Ex. A.)  Feliciano did the same on November 9, 2007 – 4 days after his employment began (*id.*

¶ 5 & Ex. B), and Fonseca did the same on December 20, 2010 – approximately 21 days after her

employment began (*id.* ¶ 6 & Ex. C).  None of the named plaintiffs dispute that they received

copies of the Arbitration Agreement.

The Arbitration Agreement provides that it is "a contract requiring both parties to resolve most employment-related disputes . . . that are based on a legal claim through final and binding arbitration."  (*Id.*, Ex. A ¶ B.)  A dispute was "based on a legal claim," so as to subject it to arbitration, if it arose "under any federal, state or local statute . . . relating to employment discrimination, terms and conditions of employment, or termination of employment including . . . the Fair Labor Standards Act."  (*Id.*)  Plaintiffs do not dispute that their FLSA and NYLL claims are "disputes . . . that are based on a legal claim" under this definition.

The Arbitration Agreement also contains a class and collective action waiver, as follows:

> Any dispute covered by this Policy will be arbitrated on an individual basis.  No dispute between an employee and UnitedHealth Group may be consolidated or joined with a dispute between any other employee and UnitedHealth Group, nor may an individual employee seek to bring his/her dispute on behalf of other employees as a class or collective action.

(*Id.*)

The Arbitration Agreement provides that the rules and procedures used by the parties "are generally based on the Employment Dispute Resolution Rules of the American Arbitration Association" (the "AAA").  (*Id.* ¶ C.)  However, the "provisions regarding fees and costs [were] modified to provide that many of the costs typically shared by the parties will be borne by" defendant.  (*Id.*)  Thus, under the Arbitration Agreement, if an employee commenced the arbitration process, defendant would pay "100 percent in excess of the first twenty-five ($25) of the required AAA administrative fee."  (*Id.* ¶ C(1)(a).)  Defendant would pay the entirety of the AAA administrative fees when it initiated the arbitration process.  (*Id.* ¶ C(1)(b).)  With respect

to other costs and attorney's fees, the Arbitration Agreement provided:

> The expenses of witnesses for either side shall be paid by the party
> requiring the presence of such witnesses.  Each side shall pay its own
> legal fees and expenses, except where such legal fees and expenses
> may be awarded under applicable law.  All other expenses . . . of the
> arbitration, such as required travel and other expenses of the arbitrator
> . . . and the expenses of a representative of AAA, if any, shall be paid
> completely by UnitedHealth Group.  This allocation of expenses may
> not be changed by the arbitration award.  However, if the arbitrator
> finds that the employee's or UnitedHealth Group's demand for
> arbitration is frivolous, or vexatious, or was not filed in good faith,
> the arbitrator may require the offending party to reimburse the other
> party for the arbitrator's expenses.

(*Id.* ¶ C(25).)

Pursuant to the Arbitration Agreement, "[e]ither party may bring an action in a court of competent jurisdiction to compel arbitration under this Policy . . . ."  (*Id.* ¶ C(24).)  Thus, after plaintiffs commenced this action on February 27, 2012, defendant filed the present motion to compel arbitration.

## DISCUSSION

### I.      Standard of Review

"In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), the court applies a standard similar to that applicable for a motion for summary judgment."  *Bensadoun*, 316 F.3d at 175.  Thus, "[a] motion to compel arbitration may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, at *2 (S.D.N.Y. Jan. 13, 2012) (internal quotation marks omitted).  "'A party resisting arbitration

bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Id.* (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).  "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Nunez v. Citibank, N.A.*, 2009 WL 256107, at *2 (S.D.N.Y. Feb. 3, 2009); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

## II.     *Legal Standard*

Congress enacted the FAA in 1925 "in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S.Ct. 1740, 1745 (2011).  The FAA provides, in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The Supreme Court has "described this provision as reflecting both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S.Ct. at 1745 (internal citations and quotation marks omitted).  "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* at 1745-46 (internal citations omitted).

To decide a motion to compel arbitration of claims pursuant to the FAA, the Court must:

(1) "determine whether the parties agreed to arbitrate," (2) "determine the scope of that agreement," (3) "if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable," and (4) "if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco*, 815 F.2d at 844.  "In addition, generally applicable state-law contract defenses such as fraud, duress, or unconscionability may invalidate arbitration agreements or clauses thereto." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 304 (S.D.N.Y. 2011) (citing *Concepcion*, 131 S.Ct. at 1746).

The Supreme Court has recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  "Arbitration of a claim of statutory rights will only be compelled if that claim can be effectively vindicated through arbitration." *Raniere*, 827 F. Supp. 2d at 309 (citing *Mitsubishi*, 473 U.S. at 637 n.19; *Green Tree*, 531 U.S. at 90).

### III.    *The Collective Action Waiver Does not Prevent Plaintiffs From Vindicating Their Statutory Rights Under the FLSA*

While plaintiffs do not dispute that "FLSA claims are generally arbitrable," they "are opposed to arbitrating [their] FLSA claims exclusively on an individual basis," as they contend that "the FLSA expressly provides [them] with the right to proceed as a collective action."  (Pls.' Opp'n at 1.)  Defendant seeks not only the dismissal of the Complaint based on the existence of the Arbitration Agreement, but also a determination as to the validity of the Arbitration

7

Agreement's provision that an individual may proceed to arbitration only on his own behalf.  In response, plaintiffs assert that "the Arbitration Agreement contains an unenforceable collective action waiver" that "impermissibly requires Plaintiffs to forgo their federal statutory rights under the FLSA."  (*Id.* at 3.)  More particularly, plaintiffs argue that "[p]articipating in a collective action pursuant to Section 216(b) of the FLSA is a federal statutory right that is not subject to waiver."  (*Id.* at 6.)

The Second Circuit has not yet addressed the issue of whether an employee's right to participate in an FLSA collection action is a substantive right that cannot be waived in an arbitration agreement.[2]  Moreover, the few district courts from within this Circuit that have confronted the issue thus far have reached divergent results.  *Compare Cohen v. UBS Fin. Servs., Inc.*, 2012 WL 6041634, at *4 (S.D.N.Y. Dec. 4, 2012) (finding that "it would be inconsistent with the FAA for the Court to find as a matter of law that class waivers are *per se* unenforceable"); *LaVoice*, 2012 WL 124590 at *6 (same); *Pomposi v. Gamestop, Inc.*, 2010 WL 147196, at *11 (D.Conn. Jan. 11, 2010) ("[T]he right to bring a collective action under the FLSA is a right that can be waived.") *with Raniere*, 827 F. Supp. 2d at 314 (concluding that "a waiver of a right to proceed collectively under the FLSA is unenforceable as a matter of law" given that

---

[2]     Other circuits that have addressed the issue have concluded that a collective action waiver in an arbitration agreement does not deprive an employee of any substantive rights available under the FLSA.  *See, e.g., Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (rejecting plaintiffs' "claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA"); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) ("Adkins points to no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute."); *Horenstein v. Mortg. Mkt., Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001) ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute.").

"by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute") (internal quotation marks and alteration omitted).

Section 2 of the FAA "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012). "That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.* (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)); *see also Gilmer*, 500 U.S. at 26 ("Although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'") (quoting *Mitsubishi*, 473 U.S. at 628). The party resisting arbitration bears the burden "to show that Congress intended to preclude waiver of a judicial form for [his statutory] claims." *See Gilmer*, 500 U.S. at 26. "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Id.* (internal quotation marks omitted).

Plaintiffs assert that "[t]he plain language of Section 216(b) [makes] clear [that] commencing or participating in a collective action is an unwaivable statutory 'right.'" (Pls.' Opp'n at 7.) Section 216(b) of the FLSA provides:

> Any employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of

9

> himself or themselves and other employees similarly situated.  No
> employee shall be a party plaintiff to any such action unless he gives
> his consent in writing to become such a party and such consent is
> filed in the court in which such action is brought . . . The right
> provided by this subsection to bring an action by or on behalf of any
> employee, and the right of any employee to become a party plaintiff
> to any such action, shall terminate upon the filing of a complaint by
> the Secretary of Labor in an action under section 217 of this title
> . . . .

29 U.S.C. § 216(b).

Plaintiffs support their position by pointing to the statute's reference to "*the right* of any employee" to bring an action on behalf of another employee or join a collective action.  (Pls.' Opp'n at 7.)  In making this argument, plaintiffs rely heavily on *Owen v. Bristol Care, Inc.*, 2012 WL 1192005 (W.D.Mo. Feb. 28, 2012).  This case, however, was reversed by the Eighth Circuit in a decision handed down after the present motion was fully briefed and filed.  *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 2013 WL 57874, at *2 (8th Cir. Jan. 7, 2013).

In any event, the Court notes that although the statute does refer to "the right of an employee" to bring or join a collective action, the statute simultaneously describes the manner in which such right "shall terminate."  Moreover, the statute provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party."  29 U.S.C. § 216(b).  As the Eighth Circuit recently noted in *Owen*, "[e]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well."  *Owen*, 2013 WL 57874 at *2.  Finally, the language of the statute makes clear that while a collective action "may be maintained" against an employer, an employee is not required to proceed as part of a collective action.  *See Killion v. KeHE Distribs.*, 2012 WL 3201889, at *7

10

(N.D.Ohio Aug. 3, 2012) ("The statute *permits* a collective action, but it does not *require* one.") (emphases in the original).

Plaintiffs also argue that the FLSA's legislative history and underlying purpose evidence a congressional intent to preclude an employee from waiving his right to proceed as part of a FLSA collective action.  Specifically, plaintiffs assert that collective actions "are the means by which Congress implemented the FLSA to ensure that all similarly situated employees receive notice of a pending lawsuit and provide them an opportunity to join."  (Pls.' Opp'n at 9.) Plaintiffs further contend that "collective and class waivers of employment claims will foster [employers'] non-compliance [with the statute], prevent putative class members from receiving notice of their potential claim, and result in non-uniform enforcement of identical violations." (*Id.* at 15.)

The legislative history of the FLSA's collective action provision is "extremely limited." *Killion*, 2012 WL 3201889 at *7.  The following statement made by Representative Kent Keller during the "quite brief" congressional debates on the subject is the "only reference" to the section of the FLSA that contained the original collective action provision:

> Among the provisions for the enforcement of the act an old principle has been adopted and will be applied to new uses.  If there shall occur violations of either the wages or hours, the employees can themselves, *or by designated agent or representatives*, maintain an action in any court to recover the wages due them and in such a case the court shall allow liquidated damages in addition to the wages due equal to such deficient payment and shall also allow a reasonable attorney's fees and assess the court costs against the violator of the law so that employees will not suffer the burden of an expensive lawsuit.  The provision has the further virtue of minimizing the cost of enforcement by the Governments.  It is both a common-sense and economical method of regulation.  The bill has other penalties for violations and other judicial remedies, but the provision which I have

11

> mentioned puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights, thus avoiding the assumption by Government of the sole responsibility to enforce the act.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 705 n.16 (1945) (quoting 83 Cong. Rec. p. 9264 (emphasis added)). The original collective action provision was subsequently amended by the Portal-to-Portal Act of 1947, and those "amendments limited representative suits to those workers who submit written opt-in notices." *Raniere*, 827 F. Supp. 2d at 313. Thus, the FLSA's current collective action provision was "crafted by not one but over the course of several Congresses to balance the need to incentivize the bringing of often small claims by way of collectivization in order to ensure the statute's function, while barring actions brought on behalf of employees who had no real involvement in, or real knowledge of, the lawsuit." *Id.* (internal quotations omitted).

This scant legislative history is not at all persuasive that Congress intended the right to participate in an FLSA collective action to be an unwaivable right. If anything, the legislative history makes clear that Congress amended the FLSA for the specific purpose of adding a requirement that an employee take the affirmative step of opting-in before he can avail himself of the right to participate in a collective action. Overall, neither the plain language of the FLSA nor its relevant legislative history evidence a congressional intent to preclude employees from waiving their right to bring their FLSA claims as part of a collective action.

**IV.**    ***The Collective Action Waiver Does not Have the Practical Effect of Preventing Plaintiffs From Vindicating Their Statutory Rights Under the FLSA***

Plaintiffs argue that the Arbitration Agreement's collective action waiver "will serve to limit Defendant's liability to only those employees who have larger claims and likely worked for

12

longer periods of time for Defendant." (Pls.' Opp'n at 15.)  According to plaintiffs, "[i]ndividuals with small claims are unlikely to retain an attorney, commence a suit or arbitration, and are unlikely to invest the time required to review and respond to discovery demands and prepare for and attend depositions and hearings." (*Id.* at 16.)  Thus, plaintiffs assert, "because of the economic realities involved [in proceeding on an individual – rather than collective – basis], plaintiffs [are] effectively prohibited from pursuing their statutory claims." (*See id.*)

In *In re American Express Merchants' Litigation*, the Second Circuit addressed "whether a mandatory class action waiver clause is enforceable even if the plaintiffs are able to demonstrate that the practical effect of enforcement would be to preclude their ability to bring their federal [statutory] claims." 667 F.3d 204, 214 (2d Cir. 2012).  In that case, the evidence presented by the plaintiffs established, "as a matter of law, that the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws." *Id.* at 217.[3]  Thus, the Circuit concluded, "as the class action waiver in this case precludes plaintiffs from enforcing their statutory rights, we find the arbitration provision unenforceable." *Id.* at 218.  The Circuit emphasized that it did not hold that "class action waivers in arbitration agreements are per se unenforceable," but that "each waiver must be considered on its own merits, based on its own record, and governed with a healthy regard for the fact that the FAA 'is a congressional declaration of a liberal federal policy favoring

---

[3]      In that case, expert testimony revealed that although the average plaintiff could expect to recover treble damages of $5,252, "it would not be worthwhile for an individual plaintiff . . . to pursue individual arbitration or litigation where the out-of-pocket costs, just for the expert economic study and services, would be at least several hundred thousand dollars, and might exceed $1 million." *In re Am. Express Merchs.' Litig.*, 667 F.3d at 217-18.

arbitration agreements.'" *Id.* at 219 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. As the Second Circuit has noted, "the evidentiary record necessary to avoid a class-action arbitration waiver is not easily assembled." *In re Am. Express Merchs.' Litig.*, 667 F.3d at 217 (stating that "[t]he fact that plaintiffs so often fail in their attempts to overturn such waivers" is attributable to "the quality of the evidence presented, not the viability of the legal theory").

Here, plaintiffs have not provided the Court with any information regarding the cost of arbitrating or litigating their individual FLSA claims. In fact, the only record evidence in this regard shows that an individual plaintiff initiating arbitration would be responsible for a maximum of $25 in AAA fees as well as his own costs and attorney's fees. This case appears to involve relatively straightforward claims for unpaid overtime compensation, and plaintiffs have not asserted that any individual claim would require the use of an expert. Moreover, the FLSA allows the prevailing party to recover his costs and reasonable attorneys' fees, and the Arbitration Agreement provides that it would honor such cost and fee-shifting. (Ray Decl., Ex. A ¶ C(25).)

Plaintiffs have also failed to provide any information or estimates regarding any individual's projected recovery. Therefore, the Court has absolutely no means by which it could measure any disparity between an individual's potential recovery and the costs of that person arbitrating his claim on an individual basis, and can certainly not conclude that such a disparity is "so great that this case could not be effectively prosecuted on an individual basis." *See Pomposi*,

14

2010 WL 147196 at *7.  This case is distinguishable, therefore, from *Sutherland*, which plaintiffs

cite in support of their opposition.  (*See* Pls.' Opp'n at 11.)  In *Sutherland*, the plaintiff submitted

record evidence demonstrating that if she were to proceed with individual arbitration, she "would

be required to spend approximately $200,000 in order to recover double her overtime loss of

approximately $1.867.02."  768 F. Supp. 2d at 552.  Moreover, the arbitration agreement in

*Sutherland* vested the arbitrator with discretion as to whether attorneys' fees and expenses were

compensable and the amount of any reimbursement, thereby creating "obstacles to

reimbursement of [the plaintiff's] fees and expenses" that are not present here.  *See id.* at 553.

Accordingly, the Court concludes the plaintiffs have failed to meet their burden of

showing that the costs of proceeding to arbitration on an individual basis are so prohibitively

expensive that the class and collective action waiver provision of the Arbitration Agreement has

the practical effect of precluding them from exercising their statutory rights.

## V.    *No Conflict Between FAA and NLRA or Norris-LaGuardia Act*

Plaintiffs also assert that the collective action waiver in the Arbitration Agreement should

be "invalidated because the [National Labor Relations Board ("NLRB")] has determined that

such waivers violate the [National Labor Relations Act ("NLRA")] and Norris-LaGuardia Act."

(Pls.' Opp'n at 19.)  Specifically, in *D.R. Horton, Inc.*, the NLRB concluded that "an agreement

that precludes [employees] from filing joint, class or collective claims addressing their wages,

hours or other working conditions against the employer in any forum, arbitral or judicial . . .

unlawfully restricts employees' [NLRA] Section 7 right to engage in concerted action for mutual

aid or protection, notwithstanding the [FAA], which generally makes employment-related

arbitration agreements judicially enforceable."  357 N.L.R.B. No. 184, 2012 WL 36274, at *1

(N.L.R.B. Jan. 3, 2012).

The NLRB's interpretation of the FAA (or other "statutes outside its expertise") is not entitled to any particular deference by this Court.  *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 529 n.9 (1984) (declining to defer to the NLRB's interpretation of the Bankruptcy Code); *Owen*, 2013 WL 57874 at *3 (affording "no deference" to the NLRB's interpretation of the FAA); *Delock v. Securitas Sec. Servs. USA, Inc.*, 2012 WL 3150391, at *3 (E.D.Ark. Aug. 1, 2012) (noting that "the Board has no special competence or experience in interpreting the Federal Arbitration Act"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 844 (N.D.Cal. 2012) (declining to give deference to NLRB's interpretation of Norris-LaGuardia Act). Additionally, the Court "is 'not obligated to defer to the [the Board's] interpretation of Supreme Court precedent under *Chevron* or any other principle.'" *Owen*, 2013 WL 57874 at *3 (quoting *Delock*, 2012 WL 3150391 at *3) (alteration in the original)).

Even if the Court were to defer to the NLRB's conclusion in *D.R. Horton*, the present case falls outside the contours of the NLRB's limited holding.  The NLRB concluded:

> We need not and do not mandate class arbitration in order to protect employees' rights under the NLRA.  Rather, we hold only that employers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in *all* forums, arbitral and judicial.  So long as the employer leaves open a judicial forum for class and collective claims, employees' NLRA rights are preserved without requiring the availability of class-wide arbitration. Employers remain free to insist that *arbitral* proceedings be conducted on an individual basis.

*D.R. Horton*, 2012 WL 36274 at 16 (emphases in the original).  The Eighth Circuit has concluded that an arbitration agreement with a collective action waiver falls outside the limitations of *D.R. Horton's* holding when the agreement "does not preclude an employee from

16

filing a complaint with an administrative agency such as the Department of Labor (which has jurisdiction over FLSA claims, *see* 29 U.S.C. § 204)" and when "nothing in the [agreement] precludes any of these agencies from investigating and, if necessary, filing suit on behalf of a class of employees." *Owen*, 2013 WL 57874 at *3. Here, the Arbitration Agreement expressly states that it "does not preclude an employee from filing a claim or charge with a governmental administrative agency, such as the . . . Department of Labor," (Ray Decl., Ex. A ¶ B), and nothing in the agreement prevents the DOL from filing suit against defendant on behalf of a class of employees. Thus, the Court finds that *D.R. Horton's* holding is inapplicable here and that the NLRA does not preclude enforcement of the Arbitration Agreement's collective action waiver.

## CONCLUSION

For the reasons set forth above, defendants' motion to compel arbitration is granted and the case is dismissed. The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
      February 1, 2013                           _____/s/_____
                                                 Denis R. Hurley
                                                 Unites States District Judge